United States District Court
Eastern District of Michigan
Southern Division

United States of America,

   Plaintiff,

           Hon. Arthur J. Tarnow

v.

           Case No. 19-20821

D-8 Bahia Zeidan,

   Defendant.

_____/

# Plea Agreement

The United States of America and the defendant, Bahia Zeidan, have reached a plea agreement under Federal Rule of Criminal Procedure 11. The plea agreement's terms are:

**1. Count of Conviction**

The defendant will plead guilty to Count 5 of the First Superseding Indictment. Count 5 charges the defendant with wire fraud, under 18 U.S.C. § 1343.

**2. Statutory Minimum and Maximum Penalties**

The defendant understands that the count to which she is pleading guilty carries the following minimum and maximum statutory penalties:

Page **1** of **21**

| Count 5 | Term of imprisonment: | Up to 20 years in prison |
| | Fine: | Not to exceed twice the amount of loss |
| | Term of supervised release: | Up to 5 years |

### 3.    Agreement to Dismiss Remaining Charges

If the Court accepts this agreement and imposes sentence consistent with its terms, the United States Attorney's Office for the Eastern District of Michigan will move to dismiss any remaining charges in the indictment against the defendant in this case. Specifically, the United States Attorney's Office will move to dismiss Count 1 (conspiracy to commit wire and mail fraud, under 18 U.S.C. § 1349), and Count 27 (money laundering, under 18 U.S.C. § 1957).

### 4.    Elements of Counts of Conviction

The elements of Count 5 (wire fraud) are:

*First,* the defendant knowingly participated in a scheme to defraud or to obtain money and property by materially false or fraudulent pretenses, representations, or promises;

*Second,* the defendant acted with the intent to defraud; and

*Third,* in advancing, furthering, or carrying out the scheme, the defendant caused the transmission of a signal of some kind by means of a wire communication in interstate commerce.

## 5.   Factual Basis

The parties agree that the following facts are true, accurately describe the defendant's role in the offense, and provide a sufficient factual basis for the defendant's guilty plea:

Beginning in or around July 2014 and continuing through December 2019, in the Eastern District of Michigan and elsewhere, the defendants HUSSEIN ABDALLAH, MOHAMAD ABOU-KHODR, DANIEL HAIDAR, NABIL CHEHADEH, ALI EL-MOUSSAWI, BASSEM FARHAT, HUSSEIN WAZNE, BAHIA ZEIDAN, LINDA FAWAZ, SUZAN BERRO and MOHAMAD CHARAF did willfully and knowingly combine, conspire, confederate and agree with others, to execute and attempt to execute a scheme and artifice to defraud and to obtain money and property through co-pay assistance programs by means of false and fraudulent pretenses, representations, and promises, with such scheme involving the use of the mail and interstate wire communications.

Specifically, the defendants worked together to defraud pharmaceutical manufacturers by submitting co-pay assistance reimbursement claims for medications that were neither prescribed nor dispensed; in fact, many of the claims were submitted for drugs that were never even purchased from the manufacturer. The customers associated with these claims were fictitious, created by various defendants using random name generators or other methods. Likewise, the identifying information for these customers was also fabricated, as was the bundle of prescriptions that any given customer was purportedly filling. The defendants specifically targeted coupon reimbursement programs connected with expensive drugs, and when submitting claims they made it appear as though their customers lacked insurance in order to receive the maximum possible "reimbursement" under these programs.

The claims themselves were primarily submitted via the internet, using a common pharmaceutical billing software known as SRS. Likewise, the proceeds of these claims were typically paid to the defendants in the form of physical checks that were mailed to their various pharmacy locations.

Defendant Zeidan was personally involved with and directly shares responsibility for the losses from Levan RX. In 2017, Defendant Zeidan personally participated in and furthered the fraudulent scheme by opening Levan RX in her name. Defendant Zeidan communicated via the cell phone application WhatsApp with Defendant Haidar about Levan RX, and agreed to split the proceeds from the pharmacy. Defendant Zeidan knew that Defendant Haidar submitted false co-pay reimbursement claims for Levan RX. Defendant Zeidan deposited reimbursement checks from the false claims into a bank account that she opened for Levan RX. Although Defendant Zeidan received funds from Levan RX, the pharmacy was never open to the public and did not dispense prescription medications.

As a result of their scheme, the defendants fraudulently obtained a total of more than $46,000,000 from various pharmaceutical manufacturers. For purposes of the sentencing guidelines and restitution, the parties stipulate and agree that Defendant Zeidan is responsible for losses between $250,000 and $500,000. Defendant Zeidan received approximately $373,683.00 in fraud proceeds. The victims and restitution amounts are specified later in this agreement.

6.    **Advice of Rights**

The defendant has read the First Superseding Indictment, has discussed the charges and possible defenses with her attorney, and understands the crimes charged. The defendant understands that, by pleading guilty, she is waiving many important rights, including the following:

A.    The right to plead not guilty and to persist in that plea;

B.    The right to a speedy and public trial by jury;

C.    The right to be represented by counsel—and, if necessary, have the court appoint counsel—at trial;

D.    The right to be presumed innocent and to require the government to prove the defendant guilty beyond a reasonable doubt at trial;

E.    The right to confront and cross-examine adverse witnesses at trial;

F.    The right to testify or not to testify at trial, whichever the defendant chooses;

G.   If the defendant chooses not to testify at trial, the right to have the jury informed that it may not treat that choice as evidence of guilt;

H.   The right to present evidence or not to present evidence at trial, whichever the defendant chooses; and

I.   The right to compel the attendance of witnesses at trial.

**7.   Collateral Consequences of Conviction**

The defendant understands that her conviction here may carry additional consequences under federal or state law. The defendant understands that, if she is not a United States citizen, her conviction here may require her to be removed from the United States, denied citizenship, and denied admission to the United States in the future. The defendant further understands that the additional consequences of her conviction here may include, but are not limited to, adverse effects on the defendant's immigration status, naturalized citizenship, right to vote, right to carry a firearm, right to serve on a jury, and ability to hold certain licenses or to be employed in certain fields. The defendant understands that no one, including the defendant's attorney or the Court, can predict to a certainty what the additional consequences of

the defendant's conviction might be. The defendant nevertheless affirms that the defendant chooses to plead guilty regardless of any immigration or other consequences from her conviction.

## 8. Defendant's Guideline Range

### A. Court's Determination

The Court will determine the defendant's guideline range at sentencing.

### B. Acceptance of Responsibility

The government recommends under Federal Rule of Criminal Procedure 11(c)(1)(B) that the defendant receive a two-level reduction for acceptance of responsibility under USSG § 3E1.1(a). Further, if the defendant's offense level is 16 or greater and the defendant is awarded the two-level reduction under USSG § 3E1.1(a), the government recommends that the defendant receive an additional one-level reduction for acceptance of responsibility under USSG § 3E1.1(b). If, however, the government learns that the defendant has engaged in any conduct inconsistent with acceptance of responsibility—including, but not limited to, making any false statement to, or withholding information from, her probation officer; obstructing justice in any way;

denying her guilt on the offense(s) to which she is pleading guilty; committing additional crimes after pleading guilty; or otherwise demonstrating a lack of acceptance of responsibility as defined in USSG § 3E1.1—the government will be released from its obligations under this paragraph, will be free to argue that the defendant not receive *any* reduction for acceptance of responsibility under USSG § 3E1.1, and will be free to argue that the defendant receive an enhancement for obstruction of justice under USSG § 3C1.1.

### C.   Other Guideline Recommendations

The parties also recommend under Federal Rule of Criminal Procedure 11(c)(1)(B) that the following guideline provisions apply:

- Pursuant to USSG §2B1.1(a)(1), the base offense level for Count 1 is 7;

- Pursuant to USSG §2B1.1(a)(K), the loss amount was more than $250,000 but less than $550,000, resulting in an increase of 12 levels;

- Pursuant to USSG §2B1.1(b)(2)(A)(i), the offense involved 10 or more victims.

### D.    Parties' Obligations

Both the defendant and the government agree not to take any position or make any statement that is inconsistent with any of the guideline recommendations or factual stipulations in paragraphs 8.B, 8.C, or 8.D. Neither party is otherwise restricted in what it may argue or present to the Court as to the defendant's guideline calculation.

### F.    Not a Basis to Withdraw

The defendant understands that she will have no right to withdraw from this agreement or withdraw her guilty plea if she disagrees, in any way, with the guideline range determined by the Court, even if that guideline range does not incorporate the parties' recommendations or factual stipulations in paragraphs 8.B, 8.C, or 8.D. The government likewise has no right to withdraw from this agreement if it disagrees with the guideline range determined by the Court.

## 9.    Imposition of Sentence

### A.    Court's Obligation

The defendant understands that in determining her sentence, the Court must calculate the applicable guideline range at sentencing and must consider that range, any possible departures under the sentencing

guidelines, and the sentencing factors listed in 18 U.S.C. § 3553(a), and apply any applicable mandatory minimums.

### B.   Imprisonment

#### 1.   Recommendation

Under Federal Rule of Criminal Procedure 11(c)(1)(B), the government recommends that the defendant's sentence of imprisonment on Count 1 not exceed the midpoint of the defendant's guideline range as determined by the Court.

#### 2.   No Right to Withdraw

The government's recommendation in paragraph 9.B.1 is not binding on the Court. The defendant understands that she will have no right to withdraw from this agreement or withdraw her guilty plea if the Court decides not to follow the government's recommendation. The government likewise has no right to withdraw from this agreement if the Court decides not to follow the government's recommendation. If however, the Court rejects or purports to reject any other term or terms of this plea agreement, the government will be permitted to withdraw from the agreement.

### C.   Supervised Release

#### 1.   Recommendation

Under Federal Rule of Criminal Procedure 11(c)(1)(B), the parties recommend that the Court impose a 3-year term of supervised release.

#### 2.   No Right to Withdraw

The parties' recommendation is not binding on the Court. The defendant understands that she will have no right to withdraw from this agreement or withdraw her guilty plea if the Court decides not to follow the parties' recommendation. The defendant also understands that the government's recommendation concerning the length of the defendant's sentence of imprisonment, as described above in paragraph 9.B.1, will not apply to or limit any term of imprisonment that results from any later revocation of the defendant's supervised release.

### D.   Fines

There is no recommendation or agreement as to a fine.

### E.   Restitution

The Court must order restitution to every identifiable victim of the defendant's offense. There is no recommendation or agreement on

restitution. The Court will determine at sentencing who the victims are and the amounts of restitution they are owed.

The defendant agrees that restitution is due and payable immediately after the judgment is entered and is subject to immediate enforcement, in full, by the United States. 18 U.S.C. §§ 3612(c) and 3613. If the Court imposes a schedule of payments, the defendant agrees that the schedule of payments is a schedule of the minimum payment due, and that the payment schedule does not prohibit or limit the methods by which the United States may immediately enforce the judgment in full.

The defendant agrees to make a full presentence disclosure of her financial status to the United States Attorney's Office by completing a Financial Disclosure Form and the accompanying releases for the purpose of determining her ability to pay restitution. The defendant agrees to complete and return the Financial Disclosure Form within three weeks of receiving it from government counsel. The defendant agrees to participate in a presentencing debtor's examination if requested to do so by government counsel.

**F.    Forfeiture**

As part of this agreement, defendant agrees to forfeit any and all property, real or personal, which constitutes or is derived, directly or indirectly, from proceeds traceable to her participation in the described co-pay assistance fraud scheme under 18 U.S.C. § 981(a)(1)(C) together with 28 U.S.C. § 2461(c). Specifically, defendant agrees to the entry of a forfeiture money judgment against her, in favor of the United States, in the amount of $373,683.00 (the "Money Judgment"). Defendant agrees that she personally obtained at least $373,683.00 as a result of her participation in the co-pay assistance fraud scheme described in the Factual Basis, above.

Defendant also acknowledges that she used proceeds that she acquired from the conspiracy to pay for numerous assets, including, but not limited to, a 2016 Cadillac Escalade Utility 4D VIN 1GYS4CKJ0GR253386. Defendant acknowledges that the 2016 Cadillac Escalade has been substituted, by agreement, with $10,000 and that these funds are being held by the United States Marshal's Service as Asset 20-FBI-001808 (the "Subject Property"). Defendant agrees to

satisfy a portion of the Money Judgment by forfeiting all of her right, title, and interest in the Subject Property to the United States.

Following entry of this Rule 11 Agreement, defendant agrees to the Court's prompt entry of one or more orders of forfeiture, and agrees to sign a Stipulated Preliminary Order of Forfeiture for forfeiture of the Subject Property and entry of the $373,683.00 Money Judgment, at her Rule 11 plea hearing, or within two weeks of that hearing. Defendant agrees that the forfeiture order shall be final and effective as to her interests upon entry.

Defendant acknowledges that she spent and dissipated many of the criminal proceeds that she obtained in connection with the described scheme, making these funds unavailable for forfeiture. For this reason, defendant agrees that the Money Judgment may be satisfied, to whatever extent possible, from any property owned by her or under her dominion and control. Defendant explicitly agrees to the forfeiture of any and all assets she has now, or may later acquire, as substitute assets under 21 U.S.C. § 853(p)(2) and waives and relinquishes her right to oppose the forfeiture of substitute assets under 21 U.S.C. § 853(p)(1) or otherwise.

Defendant agrees to cooperate with the United States in connection with its efforts to identify, locate, seize, and forfeit property in accordance with this agreement. Defendant agrees that she will cooperate with the United States by taking whatever steps are necessary to deliver possession of, and clear title to, any property that is forfeitable to the United States and will execute any legal documents that may be required to transfer title to the United States. Defendant will take whatever steps are necessary to ensure that her assets are not sold, disbursed, hidden, wasted or otherwise made unavailable for forfeiture.

Defendant knowingly, voluntarily, and intelligently waives all constitutional and statutory challenges, in any form, to any forfeiture carried out in accordance with this plea agreement, on any grounds, including that the forfeiture constitutes an excessive fine or punishment under the Excessive Fines Clause of the Eighth Amendment.

Defendant acknowledges that she understands that forfeiture is part of the sentence that may be imposed on her in this case and waives her right to challenge any failure by the court to advise her of this, under Rule 11(b)(1)(J), or otherwise, at the time her guilty plea is

accepted. Defendant further waives the requirements of Federal Rules of Criminal Procedure 32.2 and 43(a) regarding notice of forfeiture in the charging instrument, pronouncement of forfeiture at sentencing, and incorporation of forfeiture in the judgment and waives any right she may have to request a jury determine forfeiture under Rule 32.2(b)(5).

### G.   Special Assessment

The defendant understands that she will be required to pay a special assessment of $100, due immediately upon sentencing.

## 10.   Appeal Waiver

The defendant waives any right she may have to appeal her conviction on any grounds. If the defendant's sentence of imprisonment does not exceed 33 months, the defendant also waives any right she may have to appeal her sentence on any grounds.

## 11.   Collateral Review Waiver

The defendant retains the right to raise claims alleging ineffective assistance of counsel or prosecutorial misconduct, as long as the defendant properly raises those claims by collateral review under 28 U.S.C. § 2255. The defendant also retains the right to pursue any relief

permitted under 18 U.S.C. § 3582(c), as long as the defendant properly files a motion under that section. The defendant, however, waives any other right she may have to challenge her conviction or sentence by collateral review, including, but not limited to, any right she may have to challenge her conviction or sentence on any grounds under 28 U.S.C. § 2255 (except for properly raised ineffective assistance of counsel or prosecutorial misconduct claims, as described above), 28 U.S.C. § 2241, or Federal Rule of Civil Procedure 59 or 60.

## 12.   Consequences of Withdrawal of Guilty Plea or Vacation of Judgment

If the defendant is allowed to withdraw her guilty plea(s), or if the defendant's conviction or sentence under this agreement is vacated, the government may reinstate any charges against the defendant that were dismissed as part of this agreement and may file additional charges against the defendant relating, directly or indirectly, to any of the conduct underlying the defendant's guilty plea or any relevant conduct. If the government reinstates any charges or files any additional charges as permitted by this paragraph, the defendant waives her right to challenge those charges on the ground that they were not filed in a

timely manner, including any claim that they were filed after the limitations period expired.

**13.    Use of Withdrawn Guilty Plea**

The defendant agrees that if she is permitted to withdraw her guilty plea for any reason, she waives all of her rights under Federal Rule of Evidence 410, and the government may use her guilty plea, any statement that the defendant made at her guilty plea hearing, and the factual basis set forth in this agreement, against the defendant in any proceeding.

**14.    Parties to Plea Agreement**

This agreement does not bind any government agency except the United States Attorney's Office for the Eastern District of Michigan.

**15.    Scope of Plea Agreement**

This plea agreement is the complete agreement between the parties and supersedes any other promises, representations, understandings, or agreements between the parties concerning the subject matter of this agreement that were made at any time before the guilty plea is entered in court. Thus, no oral or written promises made by the government to the defendant or to the attorney for the defendant

at any time before the defendant pleads guilty are binding except to the extent they have been explicitly incorporated into this plea agreement. If the parties have entered, or subsequently enter, into a written proffer or cooperation agreement, though, this plea agreement does not supersede or abrogate the terms of that agreement. This plea agreement also does not prevent any civil or administrative actions against the defendant, or any forfeiture claim against any property, by the United States or any other party.

## 16.   Acceptance of Agreement by Defendant

This plea offer expires unless it has been received, fully signed, in the United States Attorney's Office by 5:00 p.m. on September 21, 2021. The government may withdraw from this agreement at any time before the defendant pleads guilty.

Saima Mohsin
Acting United States Attorney

JOHN NEAL
Digitally signed by JOHN NEAL
Date: 2021.07.29 14:47:40 -04'00'

SARA WOODWARD
Digitally signed by SARA WOODWARD
Date: 2021.07.29 14:53:26 -04'00'

John K. Neal
Chief, White Collar Crime
Assistant United States
Attorney

Sara D. Woodward
Assistant United States
Attorney

Dated: 0729/21

Page **20** of **21**

By signing below, the defendant and her attorney agree that the defendant has read or been read this entire document, has discussed it with her attorney, and has had a full and complete opportunity to confer with her attorney. The defendant further agrees that she understands this entire document, agrees to its terms, has had all of her questions answered by her attorney, and is satisfied with her attorney's advice and representation.

James Thomas
Attorney for Defendant
Dated: 9/28/21

Bahia Zeidan
Defendant